■      THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. M. HATCH-AMOVITCH et al., Appellants.— In an action for a permanent injunction pursuant to article 28 of the Public Health Law, defendants appeal from an order of the Supreme Court, Westchester County, entered April 24, 1972, which granted plaintiff's motion for a temporary injunction enjoining defendants from operating an unlicensed abortion clinic. Order reversed, without costs, and motion denied. The trial of the action is to proceed forthwith. The People have obtained a temporary injunction pursuant to section 2801-b of the Public Health Law. Such an injunction may only issue upon "proof" that the "violation is one which reasonably may result in injury to any person." There has as yet been no such showing. Indeed, the papers before us indicate that the facility operated by defendants conforms to high standards of medical care. Further, there is a serious question as to whether the facility operated by defendants is an "independent out-of-hospital health facility" (10 NYCRR 700.2 [a] [6]) which requires a license under the applicable provisions of the Public Health Law. In our opinion, under these circumstances, the grant of the injunction constituted an improvident exercise of discretion. Temporary

injunctions which, in effect, grant the same relief to be expected by final judgment should be granted, if at all, with great caution and only when required by urgent situations or grave necessity, and then only upon the clearest evidence. Such relief should not be granted in cases such as this, in which there is doubt as to the plaintiff's ultimate right to the relief sought (see, e.g., *Russian Church of Our Lady of Kazan* v. *Dunkel,* 34 A D 2d 799, 801). We note further, that the temporary injunction granted exceeds the scope of section 2801-b of the Public Health Law and prevents the individual defendants from certain clearly lawful medical practices, such as the performance of abortions in their individual offices. Rabin, P. J., Latham and Shapiro, JJ., concur; Hopkins, J., dissents and votes to modify the order so as to (a) delete from the first decretal paragraph thereof the words " performing abortions other than in some licensed hospital or otherwise " and (b) insert in the second decretal paragraph thereof, after the words " State of New York ", the words " in violation of Article 28 of the Public Health Law ", and to affirm the order as so modified, with the following memorandum, in which Martuscello, J., concurs: In general, I think that the temporary injunction was properly granted. The modification which I support serves only to provide that a licensed physician, outside the City of New York, may perform abortions on his own patients in his own private office (cf. *Robin* v. *Incorporated Vil. of Hempstead,* 38 A D 2d 758, affd. 30 N Y 2d 347). As I read the statute, I do not find its provisions void for vagueness. First, the legislation defines a hospital as " a facility or institution engaged principally in providing services by or under the supervision of a physician * * * for the * * * treatment of * * * physical condition including, but not limited to, a general hospital * * * treatment center * * * maternity hospital * * * out-patient department, dispensary and a laboratory or central service facility serving one or more such institutions " (Public Health Law, § 2801, subd. 1). This broad definition is narrowed by the State Hospital Code (Public Health Law, § 2803), which includes as medical facilities both a hospital — said to mean an institution with beds for one or more inpatients, not related to the operator, primarily engaged in providing services under the supervision of a physician (10 NYCRR 700.2 [a] [5] [State Hospital Code]) — and an independent out-of-hospital health facility, meaning an institution with one or more health clinics, not part of an in-patient hospital facility, primarily engaged in providing services and facilities to out-of-hospital or ambulatory patients (under the supervision of a physician) (10 NYCRR 700.2 [a] [6]). It is the latter category under which, in my view, defendants' operations fall. It is not easy to put into specific and readily recognizable terms in a statute all the nuances and technical meanings which a science as rapidly changing as medicine is constantly creating. The necessity of broad definitions in the field of medicine has always been understood (cf. *People* v. *Allcutt,* 117 App. Div. 546, affd. 189 N. Y. 517; *People* v. *Christian,* 122 App. Div. 842). In controlling activities which impinge on the health of the community, the power of the State must be all inclusive (*Matter of Engelsher* v. *Jacobs,* 5 N Y 2d 370, 373–374) and reaches into areas, as learning advances, once considered not to constitute subjects for regulation (cf. *Matter of Towns Hosp.* v. *Trussell,* 42 Misc 2d 902, affd. 21 A D 2d 762). Birth and pregnancy have always been proper concerns of the State (e.g., Public Health Law, § 2500 [maternal health and maternal hospitals], § 2560 [practice of midwifery], § 2730 [birth defects]). The recent legalization of abortions (Penal Law, § 125.05) places a further responsibility on the Commissioner of Health which he must discharge to protect the community. We should accord to his interpretation of the statute in the administration of his duties the respect which his expertise in the field

perforce evokes. As was said by Chief Judge Fuld last year (*Matter of Howard* v. *Wyman*, 28 N Y 2d 434, 438) : " It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (See, e.g., *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108; *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph*, 308 N. Y. 333, 338; *Udall* v. *Tallman*, 380 U. S. 1, 16–18; *Power Reactor Co.* v. *Electricians*, 367 U. S. 396, 408.) As this court wrote in the *Mounting & Finishing Co.* case (294 N. Y., at p. 108), 'statutory construction is the function of the courts " but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited " (*Board* v. *Hearst Publications*, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts " if it has 'warrant in the record' and a reasonable basis in law " (same citation). " The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body " (*Rochester Tel. Corp.* v. *U. S.*, 307 U. S. 125, 146).' " On this record I cannot say that the construction given by the Commissioner has no rational basis. In 1971 the Regional Health Director inspected defendants' offices and found that they had three examining rooms and a seven-bed patient recovery area, conducted clinical research and provided laboratory services. He also found that defendants' patients came to their offices primarily for abortions. On the argument of the appeal it was not disputed that a large number of abortions (as many as 300 monthly) are regularly performed by defendants. Apparently, many of the patients reside out of the State and there seems to be little doubt that defendants are conducting a volume operation.[1] Their practice hardly represents the occasional abortion which a local physician might be expected to perform, remote from hospitals outside New York City — where the State Hospital Code has expressly directed that all abortions be performed in a hospital or " independent out-of-hospital facility " (10 NYCRR 720.7 [b], 720.18 [j] [2]; 751.9 [b]). The drive of defendants' argument against the statute is that it is void because of vagueness. Essentially they contend that there is no objective standard to distinguish between private group practice of medicine and the operation of a hospital or related facility. I do not believe that the statute is so indefinite in its application that due process is offended. " Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed " (*United States* v. *National Dairy Prods. Corp.*, 372 U. S. 29, 32–33).[2] But the statute must be " so empty of meaning that no one desirous of obeying the law could fairly be aware " (*Winters* v. *New York*, 333 U. S. 507, 524). At the same time, the doctrine does not require absolute certainty, for as Mr. Justice Holmes remarked, " the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently

1. The brochure issued by defendants states that over 17,000 abortions were performed by them in approximately a year and a half.

2. Though the doctrine of vagueness is sometimes said to be applicable only to cases involving a penal statute (cf. *Winters* v. *New York*, 333 U. S. 507, 524), the doctrine should not be constricted to those cases (cf. *Standard Chems. & Metals Corp.* v. *Waugh Chem. Corp.*, 231 N. Y. 51; *Small Co.* v. *American Sugar Refining Co.*, 267 U. S. 233). In any event, a violation of section 2801-a of the Public Health Law may entail a criminal sanction (cf. Public Health Law, §§ 12, 12-b).

estimates it, some matter of degree" (*Nash* v. *United States,* 229 U. S. 373, 377; cf. *United States* v. *Vuitch,* 402 U. S. 62). Indeed, a statute is not unconstitutional for uncertainty because there may be marginal cases in which it may be difficult to determine whether the conduct in question is good or bad (*Roth* v. *United States,* 354 U. S. 476; *United States* v. *Harriss,* 347 U. S. 612). Terms otherwise suspect withstand the test of vagueness if they have a known meaning in common parlance or among business people (*Scales* v. *United States,* 367 U. S. 203; *McGowan* v. *Maryland,* 366 U. S. 420). The test, in the final analysis, is not that the defendants are forced to make a choice in deciding whether to apply for a license; it is whether the demands of fundamental fairness under due process render it unreasonable for the defendants to suffer the consequences of disobeying the law. In the context of this case, I do not find that fundamental unfairness. Defendants are physicians, already subject to licensing (Education Law, § 6501). As physicians they are more than laymen and presumably fully aware of the usages which are engrafted on words of art employed in the practice of medicine. Clinic, hospital, and health facility cannot be words without special meaning to them as professional men. Defendants can properly be held to a different standard of definitness than existing in the sensitive area of free speech (cf. *Ashton* v. *Kentucky,* 384 U. S. 195). Moreover, the Commissioner has proceeded with reasonable precaution, first advising defendants of the interpretation which he placed on their operations and then allowing them time in which to apply for the license which he found to be required by the statute. In short, the Commissioner was clearly within his power to decide that the extent and nature of defendants' activities in performing abortions reflected more than the usual practice in which a physician engages in his office and resembled more nearly an independent out-of-hospital health facility which should be licensed. I see no purpose to be served by a trial, since defendants freely admit the activities that they are performing and, indeed, their claims on this appeal are largely devoted to an attack on the constitutionality of the statute and the State Hospital Code as applied to their practice. That defendants' practice has been well and professionally carried on does not seem to be denied by the People — but, of course, licensing, if valid, cannot be required or dispensed with, simply because in the particular case the licensee is superior in his class. I therefore vote to modify the temporary injunction as indicated and otherwise to affirm the order.

