Jerry McCRIGHT, Operator and Manager of Adult Book Store, and International Amusements, Ltd., A Delaware Corporation, Plaintiffs,

v.

Allen I. OLSON, in His Official Capacity as Attorney General for the State of North Dakota, and John O. Garaas, in His Official Capacity as County Attorney for the County of Cass, North Dakota, Defendants.

Civ. No. 4849.

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 17, 1973.

Lyle Huseby, Huseby & Backes, Ltd., Fargo, N. D., Donald M. Reno, Jr., Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiffs.

Robert P. Brady, Asst. Atty. Gen., Bismarck, N. D., John O. Garaas, State's Atty., of Cass County, Fargo, N. D., for defendants.

Before ROSS, Circuit Judge, BENSON, Chief District Judge, and DAVIES, Senior District Judge.

## MEMORANDUM OF DECISION

BENSON, Chief District Judge.

This is an action brought by Plaintiffs pursuant to 28 U.S.C. §§ 1331(a), 1343(3), (4), 2201, 2202, 2281, 2284, and 42 U.S.C. § 1983, challenging the Constitutional validity of the State of North Dakota obscenity statutes, and certain licensing statutes relating to the licensing of coin operated motion picture machines (amusement devices). Defendant Allen I. Olson, as Attorney General for the State of North Dakota, is responsible for the administration of Chapters 53–04 and 53–06 North Dakota Century Code (NDCC), the licensing statutes under challenge. Defendant John O. Garaas, as State's Attorney for the County of Cass, State of North Dakota, is required by the law to conduct, on behalf of the state, all prosecutions for public offenses in the county which he serves, which would include any violations of licensing statutes, as well as any violations under § 12–21–09 and § 12–21–11 North Dakota Century Code, the obscenity statutes under challenge.[1]

From a stipulation filed by the parties, the Court finds the following facts:

Plaintiffs own and operate a business in the City of Fargo, County of Cass, State of North Dakota, under the name, Adult Book Store. Plaintiff Jerry McCright is the operator and manager of the store. Plaintiff International Amusements, Ltd., is a Delaware Corporation authorized to do business in North Dakota, and is the owner of numerous coin operated amusement devices placed in the bookstore. The devices are machines which exhibit a movie film in a picture box after being activated by a coin.

Some time prior to March 16, 1973, the business site and inventory of the Adult Book Store was acquired by the Plaintiffs from Jemaco Company. Pursuant to Chapter 53–04 NDCC, the Attorney General had licensed the amusement devices to Jemaco Company.

In continuing the operation of the bookstore, Plaintiff, on March 16, 1973, applied to the Attorney General's licensing division for Chapter 53–04 licenses for twenty-five of the amusement devices, and enclosed the appropriate license fee. Prior thereto, on February 20, 1973, and again on February 27, 1973, Defendant John O. Garaas, in his official capacity as State's Attorney of Cass County, instituted criminal proceedings against one James D. Wolfe, then operator of the Adult Book Store owned by International Amusements, Ltd., alleging violation of Section 12–21–09. On March 21, 1973, Cass County law enforcement officials seized several of the amusement devices.

The license applications were received in the Attorney General's office on March 20, 1973. On March 31, 1973, without having issued licenses, and without explanation for not having issued the licenses, agents of the Attorney General's office seized six of the amusement devices.

On April 13, 1973, Plaintiffs commenced an action in this Court, challenging the March 21, 1973, State's Attorney seizure of amusement devices and other inventory. This suit was dismissed on April 25, 1973, pursuant to stipulation, following the return to the Plaintiff of the items seized, with the exception of one film from the amusement devices, selected by the law enforcement officials. That film was the subject of a § 12–21–09 obscenity prosecution before a jury in County Court, Cass County. A not guilty verdict was returned.

The Plaintiffs continued to operate the amusement devices without licenses, but attached a notice on each indicating application for licenses had been made. On May 3, 1973, an agent of the Attor-

1. John O. Garaas, erroneously designated County Attorney in the title of the action has filed his answer in his official capacity as State's Attorney.

ney General observed the devices in operation without licenses, and on May 9, 1973, the Attorney General's agents, without warrant, prior hearing, or service of notice, seized nineteen of them.

In an effort to discover why the licenses had not been issued, Plaintiffs' attorney telephoned the Attorney General's office. In response to this conversation, Assistant Attorney General Brady, in a letter dated May 22, 1973, set out the reasons why the licenses had not been issued. In substance, the letter related that the license applications could be considered only between the Plaintiffs' dismissal of their federal action on April 25, and the final seizure by the Attorney General on May 3, 1973. At all other times, the subject machines were either confiscated by various enforcement agencies, or were the subject matter of the Plaintiffs' federal suit. Additionally, the letter indicated that confiscation was pursuant to both Chapters 53–04 and 53–06.[2]

Along with the letter, the Assistant Attorney General forwarded forms for

license applications under Chapter 53–04 and 53–06. On June 4, 1973, the Plaintiff again made application for twenty-seven coin operated amusement devices under Chapter 53–04, as well as application for a Chapter 53–06 license. The application included all the machines previously seized and held by the Attorney General.

On June 27, 1973, the Assistant Attorney General, by letter, advised Plaintiffs the licenses would not be issued, because the machines had been operated without license, and for that reason had been confiscated.

James D. Wolfe, former manager of the Adult Book Store, was also prosecuted in Municipal Court, City of Fargo, for alleged violation of the City obscenity statutes, Section 10–0303, Fargo Revised Ordinance of 1965. On August 9, 1973, the Court filed its opinion, holding the City ordinances violated the First and Fourteenth Amendments to the United States Constitution and dismissed the action.[3]

2. "The reason your client has not received its licenses that were applied for is as follows:

"The application was received on March 20, 1973. On March 21, 1973 the Fargo Police Department seized the devices for which you had applied for licenses. Thereafter six more unlicensed coin-operated amusement devices were confiscated on March 31, 1973 by an agent of this office. On April 13, 1973 you commenced a legal action against this office and others. On April 25, 1973 you dismissed your legal action against this office and others. On May 3, 1973 we were notified that your client was again operating unlicensed coin-operated amusement devices. On May 9, 1973 twenty-five such devices were confiscated by an agent of this office. "You will note that the only period of time during which your client's application could be considered was during the period from April 26, 1973 to May 2, 1973, which consisted of approximately five business days. This consideration was further complicated by the fact that of the twenty-five coin-operated amusement devices for which licenses have been applied, six of said devices were in the possession of the Attorney General as a result of the confiscation of March 31, 1973. Furthermore, the agent of this office who confiscated the devices stated that no-

where on said devices could be found identification numbers of the nature indicated on your client's application. Without such numbers it is rather difficult to issue a license for a coin-operated amusement device. "During all other times between the date your application was received by this office and the date of this letter the coin-operated amusement devices you have applied for have either been confiscated and not subject to licensure, or you have instituted a legal action against this office involving the confiscation of certain coin-operated amusement devices, and the issue of confiscation and licensure was presumably before the court. "Confiscation of the unlicensed coin-operated amusement devices in question was pursuant to the provisions of both Chapter 53–04 and 53–06, North Dakota Century Code, this office having taken the position that the premises where these coin-operated amusement devices are located is a 'moving picture show' within the meaning of Chapter 53–06, North Dakota Century Code."

3. "10–0303. *Buying, selling, and designing obscene literature prohibited.* No person shall (1) buy, sell, distribute or cause to be distributed, or (2) cause to be sold, advertise, lend, give away, offer, show, exhibit, have in his possession with intent to sell,

The events as chronicled in the foregoing findings of fact led the Plaintiffs back to federal court, and on August 6, 1973, this action for declaratory relief, injunction, and return of property was filed, together with a 28 U.S.C. § 2281, § 2284 application for a three judge court, which was granted.

We hold the plaintiffs are entitled to relief.

Chapter 53–04 NDCC requires licenses for the operation of amusement devices. Chapter 53–06 requires the licensing, inter alia, of moving picture shows. Section 12–21–09 prohibits the purchase, exhibition, possession or distribution of obscene material. Section 12–21–11 vests police officers with authority to seize obscene materials.

The Plaintiffs challenge the constitutionality of the state licensing system for amusement devices and movie theaters in general, and as applied. Chapter 53–04, it is urged, sets out no procedural guidelines for its administration or enforcement, and thereby permits seizure by the Attorney General without prior notice or hearing, and permits the Attorney General to act with caprice. Similarly, Chapter 53–06 is claimed to be unconstitutional because, as a whole, it is vague as to the standards for license issuance and denial, and contains no requirements for a hearing or notice prior to seizure. Finally the plaintiffs urge, because their business is the sale of sexually oriented materials, they are continually subjected to criminal prosecution and confiscation, pursuant to NDCC § 12–21–09 and § 12–21–11. The Plaintiffs contend these provisions are so vague and incapable of interpretation, they operate to deny fair notice of the criminal conduct to be proscribed.

The Defendants contend that Chapter 53–04 is regulatory in nature, and as such, vests the Attorney General with complete discretion under the police power to determine the fitness of the applicant. They argue that because the statute is a regulatory act, a hearing prior to seizure is not required.

With respect to Chapter 53–06, the Defendants argue the chapter is sufficiently clear so as to apprise all persons of the included activities. Defendants further argue that the requirements of due process are met by Section 53–06–05, providing for a hearing instituted by the owner *subsequent* to the seizure.

As for the two Chapter 12–21 provisions, the Defendants argue those sections should first be authoritatively construed by state courts, and until that time, their constitutionality should be presumed. Finally, the Defendants urge that in the situation now before the court, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), compels abstention.

## I. ABSTENTION

Before considering the constitutional questions raised, the Defendants' abstention argument must be resolved.

This Court concludes the guidelines of *Younger* do not compel abstention in the case before us. In *Younger*, the court was concerned with federal courts of equity interfering in proceedings pending in state courts. There are no state criminal proceedings pending here. *Younger* stressed that as to statutes involved in pending state prosecutions, very special circumstances had to be shown before courts of the United States would enjoin pending state criminal prosecutions. Not only does irreparable injury have to be demonstrated,

lend, give away, offer, show, exhibit, distribute or cause to be distributed, or (3) design, copy, draw, photograph, print, etch, engrave, cut, carve, make, publish, or otherwise prepare or assist in preparing, or (4) receive subscriptions for any indecent or obscene book, pamphlet, paper, picutre, print, drawing, figure, image or any engraved, printed

or written matter, or any article or instrument of or for immoral use. No person shall hire, use, or employ any minor to sell, or give away, or in any manner distribute or permit any minor in his custody or control to give away or distribute in any manner any indecent article or thing."

but that injury must be "both great and immediate". 401 U.S. at 46, 91 S.Ct. 746.

In contrast to the situation in *Younger*, the appellants in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), had been continually harassed and discouraged from asserting the constitutional rights of Negro citizens. Because of the continuing threats by the state to enforce statutes, the court said the situation was one "in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights". 380 U.S. at 485, 85 S.Ct. at 1120.

*Dombrowski* does not operate to substantially broaden the availability of injunctions whenever a state statute is found to be vague "on its face". 401 U. S. at 53, 91 S.Ct. 746. While reaffirming the traditional jurisdictional requirements for injunctions, the *Younger* Court recognized that there may exist such unusual circumstances as to establish the necessary irreparable injury in the absence of bad faith and harassment. The Court did not define what might constitute such an unusual circumstance. The Plaintiffs urge that the statutes here challenged are so incapable of any constitutional construction, that were this court to abstain, it would subject them to prosecution under statutes which are clearly unconstitutional whether construed by state or federal courts.

In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the court held that where no construction or interpretation could serve to render a statute constitutional, a federal court should not abstain, but should proceed to decide the question.

This position was reaffirmed in the case of Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), where the court announced:

"Where on the other hand, it cannot be fairly concluded that the underlying state statute is susceptible of an interpretation that might avoid the necessity for constitutional adjudication, abstention would amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the constitution of the United States'" (citation omitted).

In the present case, the licensing statutes and the obscenity statutes make no provision for notice or hearing prior to seizure and contain no words which could be interpreted or construed as so providing. Additionally, the obscenity statutes, Sections 12–21–09 and 12–21–11, are on their face so vague as to be incapable of precise meaning.

Thus, the constitutional questions are properly before this Court.

Even though there are no state prosecutions pending as in *Younger*, there does appear to be present the "unusual circumstances" referred to in *Younger*. On the basis of the obscenity statutes, the Defendants have been subjected to continuing prosecutions and harassment, and on the basis of the licensing statutes, deprivation of property without due process of law. As evidenced by the vague and indefinite explanations in letters from the Attorney General's office to the Plaintiffs, together with the Assistant Attorney General's characterization of the Defendants, in his brief filed with this court, as "not proper subjects to be licensed", there is clearly a great potential of continuing harassment and prosecution. Additionally, without having to resort to speculation, it is clear from what has transpired, that the statutes in their present form have a chilling effect on the Plaintiffs' First Amendment rights. *See also* Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); First American Bank & Trust Company v. Ellwein, 474 F.2d 933 (8th Cir. 1973); Literature Inc. v. Quinn, 484 F.2d 372 (1st Cir. 1973); Avon 42nd Street Corp.

v. Myerson, 352 F.Supp. 994 (S.D.N.Y. 1972).[4]

## II. THE LICENSING STATUTES

■ It is helpful to review the legal principles applicable to the consideration of the validity of the North Dakota licensing statutes. It is recognized that the states have a legitimate interest in the regulation of obscene material. Paris Adult Theater I v. Slaton, 413 U. S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). However, this interest must not infringe upon those freedoms of press and speech which are safeguarded by the First and Fourteenth Amendments. Expression by motion pictures is one of those freedoms. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). While states may control and regulate obscenity through appropriate statutes, the statutes must be capable of precise meaning in their definition of obscenity. *See* Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1916), and Smith v. Calif., 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). A state's regulatory statutes must conform to procedures that will protect against the deprivation of free expression. Mindful of this threat, the Eighth Circuit in Luros v. United States, 389 F.2d 200 (8th Cir. 1968), commented:

> "Many well-intentioned citizens become disgusted or offended with the freedom by which purveyors of trash place their publications in the mail. But within the judicial balance is the basic concern over governmental interference into free channels of expression. It is far better there be a tight rein on authoritarian suppression, (despite differing tests) than that we live in a stifled community of self-censorship where men must feel apprehension over expression of an unpopular idea . . . ." at 206.

Turning to Section 53–04–05, the Attorney General's licensing department is authorized to establish such "rules and regulations as he may deem necessary and expedient". Amusement machines may be confiscated for failure to have a license and the Attorney General may do "any and all acts" necessary to strictly enforce the chapter.

In the case at bar, the "any and all acts" together with the right to refuse a license because the person or place is "improper", as provided in Section 53–06–06, Subsections 1 and 5, have been interpreted so as to allow the Attorney General's department to withhold the licenses without explanation, even though the required license fee had been paid, and then seize the amusement devices without warrant, notice, or prior hearing, because they were not licensed.

■ Likewise, Section 53–06–04 authorizes inspectors hired by the Attorney General to confiscate all goods of any kind, nature or description unlawfully exposed, offered or kept for sale, or as a gift, and deliver them to the Attorney General. Judging from the facts of this case, the seizure may be effected without prior hearing to determine the unlawful nature of the goods seized, and without a judicially considered warrant. The Defendants' argument that Section 53–06–05 fulfills the due process requirement by providing for recovery of the confiscated goods through an adversary action instituted by the owner *subsequent* to the actual seizure is not persuasive. The right to sue for recovery of the goods seized does not cure the constitutional deficiency. Without a hearing prior to confiscation, a substantial threat exists that constitutionally protected material would also be seized. Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). In this posture, the Supreme Court in Roaden v. Kentucky, 413 U.S.

4. This case concerned the New York City code governing movie theater licensing.

496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973) stated:

"Seizing a film, then being exhibited to the general public, presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitous action . . . without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books *or films*, calls for a higher hurdle in the evaluation of reasonableness" (emphasis added).

■ Construing Section 53–04–05 and Section 53–06–04 within the context of *Roaden*, we find that both provisions fail to provide those procedural safeguards necessary to the protection of free expression.

■ We likewise find Section 53–06–06 to be unconstitutional. To permit the Attorney General to prevent theater operation on the basis of the applicant being an "improper person", or "for any other reason it is an improper place", would be to allow him to arbitrarily exercise his power devoid of ascertainable standards to be applied in a determination of the meaning of "improper".

License refusal or revocation based on such "standards" presents a clear possibility of overbroad application of the statute to activities protected by the First and Fourteenth Amendments. Soglin v. Kauffman, 418 F.2d 163 (7th Cir. 1969); [5] Meyerson, *supra*.

## III. THE OBSCENITY STATUTES

The recent Supreme Court decision of Miller v. California, 413 U.S. 15, 22, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419, 430 (1973), confined the scope of state stat-utes designed to regulate obscene materials to works which depict or describe sexual conduct. The conduct proscribed must be specifically defined by the particular statute, as written or authoritatively construed. By this the Court does not mean that all states must enact new obscenity statutes. In a companion case, Paris Adult Theater I v. Slaton, *supra*, the Court said they were not attempting to instruct the states on how to regulate obscene material, but rather were defining the *scope* in which they may regulate obscene material. However, the *Miller* decision is definitive of the area in which states may proceed in dealing with obscene material, and carefully limits it:

"A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 430, 431.

■ Where the statute specifically defines the conduct which is prohibited, a trier of fact would have a clear standard by which to judge whether any given subject matter is obscene. As expressed in *Miller*:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (citations omitted).

■ NDCC § 12–21–09 does not meet the requirements which *Miller* has set out for state statutes. It is overly broad and so ambiguous that it fails to

5. In this case, the court declared unconstitutional a University of Wisconsin regulation which provided disciplinary action for any student "misconduct".

provide adequate, fair notice of the criminal conduct to be regulated. Words such as "salacious", "lascivious", "obscene", "lewd" and "indecent" are so void of common meaning when applied to a particular act or work that a person would have no way of determining whether his conduct or material violates the statute.

In addition to being vague, Section 12–21–09 is also unconstitutional in its failure to provide for scienter. In Smith v. California, 361 U.S. 147, 80 S. Ct. 215, 4 L.Ed.2d 205 (1953), the Court made it clear that a person cannot be made criminally liable without knowledge of the contents of what he is selling:

> "By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter." at 153, 80 S.Ct. at 218.

Section 12–21–11 has some of the same deficiencies as 53–04–05 and 53–06–04 in that it permits seizure of property by a peace officer without the requirement of a detailed search warrant or prior hearing. It leaves the initial determination of what is obscene up to the confiscating officer. It is conceivable that within this dragnet would be caught up materials protected by the First and Fourteenth Amendments. Accordingly, this section violates the constitutional guarantee of the First, Fourth and Fourteenth Amendments as enunciated in *Roaden*.

For the reasons set out in this opinion, we hold that NDCC §§ 12–21–09, 12–21–11, 53–04–05, 53–06–04, and Subsections 1 and 5 of § 53–06–06 are unconstitutional.

We do not hold that a state or city cannot validly regulate and license theaters and amusement devices, and we have not held that obscenity cannot be regulated. Theaters, amusement devices and obscenity may be regulated under the police power on the basis of public health, welfare and safety by means of a narrowly drawn statute or ordinance. Such statutes or ordinances must, as enunciated by the Supreme Court of the United States, specifically define prohibited conduct and material and must provide procedural safeguards if the seizure of property is to be permitted.[6]

The Plaintiffs are entitled to have their amusement devices licensed, and they are entitled to have the devices which have been seized returned to them. It is assumed this will be done without the necessity of the Court granting the injunctive relief requested. The Court will grant injunctive relief if, upon application, it is shown that it is necessary to carry out the mandate of this decision.

It is ordered that judgment be entered accordingly.

## APPENDIX

### North Dakota Century Code

### Chapter 53–04

§ 53–04–05. *Administering and enforcing provisions of chapter—Confiscation of machines and devices.*—The attorney general's licensing department shall administer and enforce the provisions of this chapter, and for that purpose the attorney general is directed and authorized to make, promulgate, and enforce such reasonable rules and regulations as he may deem necessary and expedient. The attorney general and the

---

6. In an unreported decision, the Municipal Judge of the City of Fargo, North Dakota, in finding the city obscenity ordinance violative of the Miller guidelines said, "This decision . . . is not a victory for the defendants nor a defeat for the City. It is a reminder that this is 1973, and that a new sound law is required to enable prosecutors and lawmen alike to do their jobs well, and to put the citizenry on notice as to what is, and what is not, lawful in respect of pornography and obscenity." August 9, 1973.

inspectors of such department may confiscate all machines and devices as defined in this chapter upon which the license fee required as provided in section 53–04–04 has not been paid, and may do any and all acts necessary or expedient for the strict enforcement of the provisions of this chapter.

## Chapter 53–06

§ 53–06–04. *Authority of inspectors to seize and confiscate property unlawfully used or employed.*—Whenever any inspector shall find in the possession of any person, firm, or corporation doing business within this state:

1. Goods, wares, or merchandise of any kind, nature, or description unlawfully exposed, offered, or kept for sale or as a gift; or

2. Any device of any kind, nature, or description, used as a game of chance or for gambling purposes,

such inspector is hereby authorized and empowered, whether the violator is arrested or not, to seize, confiscate, and deliver to the attorney general of the state all such goods, wares, and merchandise, games of chance, or gambling devices, together with the contents thereof.

§ 53–06–06. *Refusal or revocation of license—Procedure.*—The attorney general may refuse to issue a license to any person for any place where it appears:

1. That the applicant is an improper person to be licensed;

2. That the place is not provided properly with sanitary equipment;

3. That the building is not suitable for the protection of the life and limbs of the public who may frequent the same;

4. That there are not suitable appliances for the protection of the public in case of fire; or

5. That for any other reason it is an improper place to be licensed.

The attorney general, after a hearing before him upon any violation by a licensee of any statute of this state, is authorized to revoke any license granted pursuant to the provisions of this chapter. After the licensee has pleaded guilty to, or has been convicted of, a violation of any law or ordinance of any city regulating the business licensed a second time, his license shall be revoked and for one year neither he nor any place in which he may have any financial interest may be licensed again.

## Chapter 12–21

§ 12–21–09. *Buying, selling, distributing, exhibiting, preparing, possession of, or bringing into state any equipment for preparing, lewd and obscene matter—Distribution of indecent articles—Tie-in sales.*—No person, firm, copartnership, or corporation shall buy, sell, cause to be sold, advertised, lend, give away, offer, show, exhibit, distribute, cause to be distributed, or design, copy, draw, photograph, print, etch, engrave, cut, carve, make, publish, prepare, assist in preparing, solicit or receive subscriptions for, or hold in possession with intent to sell, lend, give away, offer, show, exhibit, distribute, or cause to be distributed, or bring or cause to be brought into the state any obscene, lewd, salacious, or lascivious book, pamphlet, picture, paper, letter, magazine, newspaper, writing, print, printing, film, negative, transcription, wire or tape recording, cast, cut, carving, figure, image, or other matter, article or instrument of indecent character or immoral use, or any equipment, machinery, or devices used or intended to be used in the preparation, manufacturing, or producing of such obscene matter and material. The trial court shall take into consideration and give due weight to the approval by the national association known as the "Comics Code Authority", or such association's successors, of any comic books or publications in question under sections 12–21–07, 12–21–09, and 12–21–11.

No person, firm, copartnership, or corporation shall as a condition to a sale or

delivery for resale of any paper, magazine, book, periodical, or publication require that the purchaser or consignee receive for resale any other article, book, or other publication reasonably believed by the purchaser or consignee to be obscene, lewd, lascivious, filthy, indecent, or disgusting.

The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene, lewd, salacious, or lascivious matter shall not apply to a motion picture projectionist acting within the scope of his employment as an employee of any person, firm, or corporation exhibiting motion pictures pursuant to a license issued under the provisions of chapter 53–06, provided that such operator has no financial interest in his place of employment, other than wages.

§ 12–21–11. *Seizure and confiscation of equipment used in production or manufacture of indecent literature or articles and of vehicles used in distribution of indecent articles authorized.*—Any peace officer of this state may seize any equipment used in the printing, production, or manufacture of indecent and obscene literature, matter, or articles of whatever nature, and may seize any vehicle or other means of transportation used in the distribution of such indecent and obscene literature, matter, or articles, and may arrest any person in charge thereof, provided that such arrest shall not be made of a motion picture projectionist acting within the scope of his employment as an employee of any person, firm, or corporation exhibiting motion pictures pursuant to a license issued under the provisions of chapter 53–06, provided that such operator has no financial interest in his place of employment, other than wages. The procedures prescribed in chapter 29–31 of this code relating to confiscation of equipment used in the commission of crimes shall apply and shall be followed in carrying out the provisions of this section.