**MERCO PROPERTIES, INC., and Joseph Merolla, Plaintiffs,**

v.

**Elinor GUGGENHEIMER, Commissioner of the Department of Consumer Affairs, City of New York, et al., Defendants.**

**No. 73 Civ. 4658.**

United States District Court, S. D. New York.

June 3, 1975.

Charles Sutton, New York City, for plaintiffs.

Corporation Counsel's Office, N.Y.C., by Joseph I. Lauer, Joseph Halpern and K. Jane Fankhanel, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking declaratory and injunctive relief, to restrain defendants from enforcing a New York City ordinance requiring the licensing of cabarets and catering establishments on the ground that such ordinance is unconstitutional on its face and as applied.[1]

Plaintiff Merco Properties, Inc. ("Merco") is the lessee under a written 50-year lease dating from October, 1966 of the Hotel Granada, located at 268 Ashland Place in downtown Brooklyn. Plaintiff Joseph Merolla is the principal shareholder, president and director of Merco. Defendants are the City of New York, Betty Furness, former Commissioner of Consumer Affairs, Deputy Commissioner Bernard Sack, Consumer Affairs' hearing examiner Leo Pollack, and former Mayor John V. Lindsay.[2] Plaintiffs allege that Furness, Sack and Lindsay were responsible for the administration and enforcement of the challenged ordinances during 1973.

Following successive denials by defendants of Merco's applications for catering and cabaret licenses between 1969 and 1973, plaintiffs brought the instant action challenging the 1973 license denial on constitutional grounds.[3] Specifically, plaintiffs allege that the denial of Merco's license application denied them their "constitutional right to engage in their lawful and legitimate business and vocation of providing a place . . . for the peaceable assembly of members of the public . . . and of providing . . . them food and beverages with music for listening, dancing and entertainment. . . ." Complaint, ¶ 43. Plaintiffs also contend that the denial of a license to Merco has deprived members of the public of the "place of their choice to peaceably assemble." Complaint, ¶ 44. Additionally, plaintiffs maintain that the challenged ordinance is unconstitutionally vague and overbroad on its face and as applied in that it grants the Commissioner of Consumer Affairs unfettered and unguided discretion to refuse to issue catering and cabaret licenses when she is not "satisfied" that the applicant is "a fit and proper

1. The challenged ordinance, Administrative Code, § B32–297.0, states in pertinent part: (d) A License shall be issued only after the commissioner [of consumer affairs] is satisfied that the applicant is a fit and proper person . . . .

In their brief in support of a preliminary injunction motion, plaintiffs also argue that § 773a–1.0 of the Administrative Code is unconstitutional because it requires that licensees must be citizens. This claim is without merit, since the section has been repealed, since no such cause of action is stated in plaintiffs' complaint, and since plaintiffs would lack standing, in any event, to bring such a claim, since they are citizens of the United States.

2. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, we substitute as defendants Elinor Guggenheimer in her capacity as Commissioner of Consumer Affairs of the City of New York for defendant Furness in her official capacity, and Mayor Abraham Beame in his official capacity for former Mayor Lindsay. Furness, however, remains a defendant, since she is also sued in her individual capacity.

3. Merco's cabaret license was denied by defendant Furness on October 19, 1973. After reading the transcript of Merco's hearing before defendant Pollack, Furness concluded, "You [Merco] have been deemed unfit and unqualified to hold a license." (Complaint, Ex. D).

person." Complaint, ¶46. Plaintiffs do not allege any violations of procedural due process; in fact, Merco was accorded an adversary hearing in the presence of counsel before its license was denied.

This court issued a temporary restraining order in November, 1973, enjoining the enforcement of the applicable licensing ordinances against plaintiffs, thus allowing them to use the premises of the Hotel Granada as a cabaret and catering establishment. The temporary restraining order has remained in effect as a de facto preliminary injunction pending determination of plaintiffs' motion for injunctive relief and defendants' cross-motion for dismissal pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

*Standing*

■ Defendants allege that both plaintiffs Merco and Merolla lack standing to bring this action. Since a corporation cannot be deprived of freedom of speech and of assembly, *Hague v. C. I.O.,* 307 U.S. 496, 527, 59 S.Ct. 954, 83 L.Ed. 1423 (opinion of Stone, J.; see also opinion of Roberts, J., *id.,* at 514, 59 S.Ct. 954) (1939), defendants argue that Merco does not have standing. We disagree. Merco does not maintain that it is being deprived of freedom of speech and assembly, but rather, that the public is being deprived of those rights by operation of the allegedly unconstitutional licensing ordinance. Merco does have standing, we believe, to assert the interest of the public in freedom of assembly. Such standing was granted to a corporate plaintiff in *City News Center, Inc. v. Carson,* 310 F.Supp. 1018, 1023 (M.D.Fla.1970), in which relief was also sought under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 and jurisdiction founded upon 28 U.S.C. § 1343. *But see 101 Studio Inc. v. Bardal,* 384 F.Supp.

852 (S.D.N.Y.1974). In a related context, the Fifth Circuit has noted:

> Numerous Supreme Court opinions attest to the fact that First Amendment rights are not private rights of the appellants so much as they are rights of the general public. "Those guarantees [of speech and press] are not for the benefit of the press so much as for the benefit of all of us."

*Machesky v. Bizzell,* 414 F.2d 283, 289 (5th Cir. 1969) (citations omitted). This language should apply equally to guarantees of freedom of assembly.

■ We also find that Merco has standing to assert due process claims to the extent that it alleges that its denial of a license was an unconstitutional deprivation of liberty or property. *City News Center, Inc. v. Carson, supra,* at 1022.

■ Defendants argue that Merolla is without standing to bring this action, since he cannot sue for damages to the corporation or to himself derivatively. We agree. The gravamen of Merolla's complaint is that he was injured because Merco was denied a catering and cabaret license. He does not allege a separate injury to himself as an individual.[4] In a similar situation, the Ninth Circuit held that a stockholder owner, with his wife, of all the capital stock of a corporation of which he was president and general manager could not bring an action under 42 U.S.C. § 1983 for damages suffered by the corporation. *Erlich v. Glasner,* 418 F.2d 226 (9th Cir. 1969). *See also Gentry v. Howard,* 365 F.Supp. 567 (W. D.La.1973) (corporation given standing under 42 U.S.C. § 1983; action by corporate president dismissed). The *Erlich* decision was bottomed on the rule that "even though a stockholder owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual."

---

4. Merolla does not allege, and thus we need not consider, whether he was deprived of liberty under the due process clause on the theory that the license denial on the ground that Merco, and implicitly Merolla, was not a fit and proper person, damaged Merolla's reputation. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, 573 (1972).

*Erlich v. Glasner, supra* at 228 (citation omitted). In light of the *Erlich* case, we dismiss Merolla as a party plaintiff.

### Defendants' Immunity

■ We next turn to defendants' claim that they are immune and privileged from actions brought under 42 U.S.C. § 1983. Defendant New York City was improperly named as a defendant, since a city is not a person within the meaning of 42 U.S.C. § 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). *See also Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Consequently, there is no jurisdiction under 28 U.S.C. § 1343(3). *See Fisher v. City of New York,* 312 F.2d 890 (2d Cir. 1963). Since the Declaratory Judgment Act does not afford an independent basis for relief, 6A Moore's *Federal Practice* ¶ 57.05 (2d Ed. 1974), plaintiff Merco has no claim against the City of New York. Accordingly, plaintiffs' complaint against the City of New York must be dismissed.

Plaintiffs seek compensatory and punitive damages in their complaint. Defendants contend that they are immune from claims for damages in actions brought under 42 U.S.C. § 1983. In *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that police officers were immune from damage awards for false arrests in actions under 42 U.S.C. § 1983, provided that they acted in good faith and within the scope of their duties. The Court intimated that the same result would obtain if a police officer acted under a statute he believed to be valid but which was later held to be unconstitutional, on its face or as applied. 386 U.S. at 555, 87 S.Ct. 1213.

Similarly, it has been held that while a state official sued in his official ca-

pacity, as opposed to individual capacity, cannot interject his official capacity as a bar to injunctive and declaratory relief, the fact that he is sued in his official capacity does operate as a bar to liability for monetary damages. *Williams v. Eaton,* 443 F.2d 422 (10th Cir. 1971); *Poindexter v. Woodson,* 357 F.Supp. 443 (D.Kan.1973).

■ In this action, defendants have been sued in their official capacities "and there is no question that they were acting in their respective official capacit[ies] during the period when the unconstitutional acts charged were committed." *Poindexter v. Woodson, supra,* at 460. Although defendants Furness and Sack were also sued in their individual capacities, there has been no allegation that they were acting in an individual capacity in any matter connected with the instant lawsuit. Accordingly, we must dismiss any claims for monetary damages sought by plaintiffs, since we find that this case is controlled by the above-cited cases. *See also Johnson v. Alldredge,* 488 F.2d 820, 826–27 (3d Cir. 1973), *cert. denied* 419 U.S. 882, 95 S.Ct. 148.

### Abstention

■■ Defendants contend that principles of federalism, comity and equity require that we abstain from further consideration of this action, so that the state courts may first construe the challenged ordinances. The Supreme Court has held that "[t]he paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question.'" *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 510, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972) (citations omitted).[5] In these circumstances, abstention serves to minimize

---

5. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed. 2d 688 (1971), the Supreme Court held that a federal court may not enjoin a pending state prosecution or declare invalid the stat-

ute under which the prosecution was brought, unless there are "extraordinary circumstances." Where there is no pending state proceeding, however, those decisions "have little force" and the exercise of federal jurisdiction is appropriate if the condi-

federal-state friction and avoids premature and perhaps unnecessary constitutional adjudication. *Kusper v. Pontikes,* 414 U.S. 51, 55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). Where, however, it cannot be fairly concluded that the challenged state statute or ordinance is susceptible of a constitutional interpretation, "abstention would amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the Constitution of the United States.' " *Kusper v. Pontikes, supra,* at 55, 94 S.Ct. at 306 (citation omitted). Moreover, when a statute or ordinance is challenged as being unconstitutionally overbroad on its face, as here, abstention is ordinarily inappropriate. *Zwickler v. Koota,* 389 U.S. 241, 249–50, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).[6] In addition, when the challenge to the state statute or local ordinance is on first amendment grounds, "to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota, supra,* at 252, 88 S.Ct. at 397. Since plaintiffs have challenged the ordinance here on first amendment grounds, and as unconstitutionally overbroad on its face, we hold that abstention is not appropriate in this case. *See McCright v. Olson,* 367 F.Supp. 937, 941–43 (D.N.D.1973); *Avon 42nd Street Corp. v. Myerson,* 352 F. Supp. 995, 997 (S.D.N.Y.1972).

*Burdman v. Nyquist,* 332 F.Supp. 460 (W.D.N.Y.1971), cited by defendants, does not compel a contrary conclusion. The *Burdman* court rested its decision on the possibility of a narrowing interpretation of the state statute to avoid or modify the constitutional questions. It was not presented with a statutory attack on grounds of overbreadth. As we have noted, a challenge to an ordinance on the ground that it is overbroad on its face ordinarily does not present a proper occasion for abstention.

Defendants' citation of *Coleman v. Ginsberg,* 428 F.2d 767 (2d Cir. 1970) is similarly inapposite. Although that case, like the instant case, involved a challenge to provisions of the New York City Administrative Code, the court's rationale does not apply here. The *Coleman* court was not presented with a constitutional challenge to a statute or ordinance on the grounds of overbreadth; consequently it was able to find that a narrowing interpretation of the challenged statutes and ordinances by the state court was possible. Moreover, the court found that the plaintiffs' first amendment claims were insubstantial. Here, by contrast, plaintiffs raise important first amendment questions on behalf of the public.[7]

### First Amendment Interests

Since we have decided not to abstain, we turn our attention to the merits. Our initial question is whether first amendment rights or interests are implicated

---

tions for declaratory or injunctive relief are met. *See Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 510, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). As the Supreme Court has noted, "a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). This language is applicable to the instant case, since plaintiffs would be subject to criminal penalties for operating a

cabaret or catering establishment without a license. Administrative Code, § B32–308.0. That plaintiffs here have not directly challenged the constitutionality of the ordinance imposing criminal penalties is immaterial, because the principles of equity, comity and federalism suggested in *Steffel* apply equally here.

6. Although absention might have been appropriate had there been a challenge to the ordinance only as applied, we need not reach that question, since plaintiffs also attack the ordinance on its face. *See Steffel v. Thompson,* 415 U.S. 452, 474–75 n. 21, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

7. See page 12, *infra.*

by the denial of catering and cabaret licenses to Merco. Merco maintains that the denial of its licenses prevents it from providing the public with a place for peaceable assembly and from permitting performing artists to exercise their rights to freedom of expression. Defendants contend, on the other hand, that the licensing provisions at issue are concerned with the operation of a food service business, and not with "suppression, restraint or regulation of speech and assembly." (Defendants' Brief in Opposition to Preliminary Injunction Motion and in Support of Motion to Dismiss, at 4–5). They also appear to argue that "purely commercial" activities are not entitled to first amendment protection. Finally, defendants assert that even if the public is restrained from meeting or listening to entertainment at the Hotel Granada, numerous alternative meeting places are available.

Under the New York City Administrative Code, a "cabaret" is defined in pertinent part as

> any room, place or space in the city in which any musical entertainment, singing, dancing or other form of amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink. . .

Administrative Code § B32–296.0(3). Similarly, the Administrative Code defines a "catering establishment" as:

> any room, place or space in the city, which is used, leased or hired out in the business of serving food or beverages for a particular function, occasion or event, to which the public is not invited or admitted and wherein music or entertainment is permitted.

Administrative Code § B32–296.0(4).

■ Since a license is required to conduct, maintain or operate a cabaret or catering establishment, Administrative Code § B32–297.0, the licensing requirement implicates first amendment rights to the extent that musical entertainment, singing and dancing are considered communicative forms of expression, as opposed to unprivileged conduct. The Supreme Court has held that theatrical productions are within the protection of the first and fourteenth amendments. *Southeastern Promotions, Ltd. v. Conrad,* 1975, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448; *Schacht v. United States,* 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970); *cf. Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (movies constitutionally protected). *See also Southeastern Promotions, Ltd. v. City of West Palm Beach,* 457 F.2d 1016 (5th Cir. 1972); *Southeastern ·Promotions, Ltd. v. City of Mobile, Ala.,* 457 F.2d 340 (5th Cir. 1972); *Southeastern Promotions, Ltd. v. City of Atlanta, Ga.,* 334 F.Supp. 634 (N.D.Ga.1971). The Second Circuit has similarly held that coin-operated "peep show" machines "fall presumptively within the protection of the First Amendment," *414 Theatre Corp. v. Murphy,* 360 F.Supp. 34, 36 (S.D.N.Y.1973), *aff'd,* 499 F.2d 1155 (2d Cir. 1974), and that dancing is also constitutionally protected, *Salem Inn, Inc. v. Frank,* 501 F.2d 18 (2d Cir. 1974) *prob. juris. noted sub. nom. Doran v. Salem Inn, Inc.,* 419 U.S. 1119, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975). Since we are not presented with a situation where unprivileged conduct is involved, as in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed. 2d 342 (1972), the challenged licensing ordinances clearly involve first amendment rights. Moreover, the state's interest in regulating the sale of alcoholic beverages is not at issue here as it was in *California v. LaRue, supra,* since the city ordinances regulate the operation of food service businesses; alcoholic beverages are separately regulated by the New York State Liquor Authority.

■ Defendants' contention that commercial activities are not entitled to constitutional protection is without merit. *See Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1944). Defendants' allegation that first amendment rights are not violated because al-

ternative sites are available is similarly without merit. The exercise of one's first amendment rights has never been made to hinge on the availability of alternative fora before which one may speak or peaceably assemble.

We find a second ground for deciding that the licensing ordinance concerns constitutional issues. Since the enforcement of the challenged ordinance against Merco would very possibly prevent it from continuing in business, the wrongful denial of a license could constitute a fourteenth amendment denial of due process. *Misurelli v. City of Racine,* 346 F.Supp. 43, 49 (E.D.Wis.1972), *rev'd on other grounds sub nom. City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (see concurring opinion of Brennan, J., 412 U.S. at 516, 93 S.Ct. 2222). Accordingly, we must determine whether the challenged ordinances deny plaintiffs due process, as well as whether they are unconstitutionally vague or overbroad.

*Vagueness*

■ We first consider whether the challenged ordinance is unconstitutionally vague. To be consistent with the principles of due process, an enactment must be clear and precise. As the Supreme Court has noted:

> [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters [to officials] . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (footnotes omitted).

Plaintiffs contend that the challenged ordinance is unconstitutionally vague, since it provides no standards for the denial of a license regarding the licensee's character, other than that the commissioner must be satisfied that the proposed licensee is a "fit and proper person." Defendants argue that the challenged section alone is not vague, and alternatively, that the challenged section imparts sufficient specificity to the ordinance when read together with introductory sections of the Department of Consumer Affairs Licensing Code for cabarets and catering establishments to eliminate the vice of vagueness. We agree with defendants' alternative argument, and hold that the challenged ordinance is not void for vagueness on its face or as applied.

Section 773–1.0 of the New York City License Enforcement Law of 1973 provides in pertinent part:

> The council finds that for the protection and relief of the public from deceptive, unfair and unconscionable practices, for the maintenance of standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities, for the protection of the health and safety of the people of New York City and for other purposes requisite to promoting the general welfare, licensing by the department of consumer affairs is a necessary and proper mode of regulation with respect to certain trades, businesses and industries.

We believe that this section should be read in connection with § B32–297.0(d)(1),[8] challenged by plaintiffs. Taken together, it seems clear that a "fit and proper person" within the meaning of § B32–297.0(d)(1) is one who adheres to standards of integrity, honesty, and fair dealing.[9] So interpreted, we do not

8. See note 1, *supra.*

9. Pursuant to powers authorized by Administrative Code, § 773–4.0(b)(2), the Commissioner of Consumer Affairs has promulgated regulations, *inter alia,* to prevent and reme-

dy fraud, misrepresentation, deceit and unconscionable dealing, and to promote fair trade practices by those engaging in licensed activities. These regulations, however, do not define who are "fit and proper persons." The Cabaret Regulations' only reference to

believe that the Commissioner of Consumer Affairs is allowed to arbitrarily, subjectively, and unreasonably determine who shall be permitted to operate cabarets and catering establishments. Accordingly, we conclude that the challenged section of the ordinance is not unconstitutionally vague on its face.

Nor do we find that the ordinance is unconstitutionally vague as applied. The record of the licensing hearing before the hearing examiner, defendant Pollack, indicates instances where Merolla's responses were evasive and not as direct and forthright as they should have been. (See *Furness Affidavit*, at 6–9). Thus, we cannot say that it was an abuse of discretion for the Commissioner to deny Merolla's license. On the record before it, the Commissioner certainly could have concluded that Merolla was not likely to adhere to standards of integrity, honesty, and fair dealing, and was thus not a "fit and proper person" to receive a license.

Because of our interpretation of the licensing ordinance, we find it unnecessary to consider whether § B32–297.0 (d)(1) alone would be unconstitutionally vague.

### Overbreadth

We next consider whether the ordinance attacked by plaintiffs is unconstitutionally overbroad. Plaintiffs allege that the ordinance is overbroad on its face and as applied.

Although we have found that the ordinance is not unconstitutionally vague, it may nevertheless be unconstitutionally overbroad if "in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*,

*supra*, at 114, 92 S.Ct. at 2302. The issue, then, is whether the challenged ordinance must be read in conjunction with § 773–1.0 of the Administrative Code. In this context, we find that the challenged ordinance is not unconstitutionally overbroad, since we do not believe that a duly qualified person is restricted from obtaining a license to operate a cabaret or catering establishment. There is no doubt that New York City has a valid interest in the exercise of its police power to establish narrowly drawn standards for the granting of licenses, and that such standards may include consideration of the character of the applicant. *See Matter of Small v. Moss*, 277 N.Y. 501, 512, 14 N.E.2d 808 (1938).

Nor do we find that the licensing ordinance is unconstitutionally overbroad as applied. As we stated in our discussion of whether the ordinance is unconstitutionally vague as applied, we believe that the Commissioner acted within her discretion in denying the license to plaintiffs.[10]

Since we find that the challenged ordinance is not unconstitutional in any respect, we deny plaintiffs' motion for a preliminary injunction and grant defendants' motion to dismiss. Because of our disposition of the case, we direct that the injunction presently in effect against defendants be dissolved. Since plaintiffs in apparent reliance on this court's grant of injunctive relief have neglected to obtain a catering and cabaret license for the present year, we further direct that the injunction remain in effect until 30 days after entry of this opinion and order, so that plaintiffs may have an opportunity to reapply for the requested licenses.

---

the licensee's character is that he or she shall not engage directly or indirectly in any unlawful activity, nor participate in "any conduct offensive to public decency or propriety . . ." Cabaret Regulations, ¶ 4. The Catering Establishment Regulations similarly require a licensee to conform to all laws, rules, and regulations regarding the licensed premises. Catering Establishment Regulations, ¶ 10.

10. Because we find that the ordinance attacked by plaintiffs is neither overbroad nor vague, either on its face, or as applied, we conclude that plaintiff Merco has not been denied due process by the denial of its application for cabaret and catering establishment licenses.

Because of this disposition, it is unnecessary to consider either defendants' motion to quash subpoenas served or to be served on personnel of the Department of Consumer Affairs or the motion to set this matter down for immediate legal argument without a hearing.

So ordered.