MARTY'S ADULT WORLD OF NEW BRITAIN, INC. and Velma Ross, Plaintiffs,

v.

Bartholomew GUIDA, Thomas Keyes, Jr., Roy Davidson, Gerald Sachs, Charles Demusis, Thomas Loricco, Frederick Ross, Jr., Orland Silvestri, James Meehan, Thomas Lyden, Jr., David McDonald, Edward Murphy, and Edward Lynch, Defendants.

Civ. A. No. N–76–364.

United States District Court,
D. Connecticut.

June 29, 1978.

Richard H. Kosinski, New Britain, Conn., for plaintiffs.

Barney Lapp and John G. Haines, Asst. Attys. Gen., Hartford, Conn., Dennis L. Pieragostini, Deputy Corp. Counsel, Joseph D. Garrison, Sp. Asst. Corp. Counsel, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, District Judge.

In 1973 Marty's Adult World of New Britain, Inc. [Marty's] began efforts to open an establishment planned as a "health club" in New Haven. During the next two years, various New Haven city officials and a court clerk allegedly obstructed the opening of the health club, ultimately succeeding in forcing Marty's to abandon its plans. Marty's and plaintiff Velma Ross, an officer and shareholder in the corporation, now seek damages under 42 U.S.C. §§ 1983 and 1985 from the city officials and court clerk for alleged deprivations of their rights guaranteed under the Fourteenth Amendment and Article I, Section 10 of the United States Constitution. Jurisdiction is properly asserted under 28 U.S.C. § 1343.

Defendants have filed two motions to dismiss, which for purposes of this opinion, will be considered together. Defendants claim that plaintiff Velma Ross lacks standing to sue and that neither plaintiff has stated a claim upon which relief can be granted. Under the latter challenge, defendants have raised the following points: (a) the necessary elements for a Section 1985 cause of action have not been alleged,

(b) defendant Edward Lynch as a court clerk is immune from suit under the doctrine of judicial immunity, (c) the actions of Mr. Lynch do not amount to a constitutional infraction, and (d) there is no merit to the federal claims because plaintiffs' case merely revolves around an allegedly wrongful construction of New Haven zoning ordinances. For the reasons stated below, this Court grants the motions to dismiss as to plaintiff Velma Ross and as to all claims grounded upon 42 U.S.C. § 1985, but denies the motions to dismiss as to Marty's claims against defendants under 42 U.S.C. § 1983.

## I. STATEMENT OF FACTS

■ For purposes of a motion to dismiss, the Court accepts all material allegations in the complaint as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). On November 9, 1973, the New Haven Building Inspector issued Marty's a building permit to alter and repair the future health club premises. Six days later, the Inspector revoked the permit without a hearing on the ground that Marty's did not intend to use the facilities in conformity with permissible uses in the particular business zone. Plaintiffs claim not only that the Inspector's revocation of the permit was illegal because the intended use was permitted under the zoning ordinance, but also that the Inspector planned and conspired with other city officials to revoke the permit.

The New Haven Board of Zoning Appeals (Board) upheld the decision of the Inspector and denied Marty's application for a special exception to the zoning ordinance on December 13, 1978. Plaintiffs allege that the Zoning Director of the City Planning Department submitted a libelous and hearsay report to the Board, that the Board hearing was incomplete because stenographic paper ran out during the hearing, and that the Board's decision was made after consultations with the Mayor, the City Corporation Counsel, the Zoning Director, and the Building Inspector or their agents.

Plaintiffs appealed the Board's decision to the Court of Common Pleas for New

Haven County pursuant to Section 8–8 of the Connecticut General Statutes. Although the appeal was claimed as a privileged matter for the court trial assignment list on February 22, 1974, plaintiffs allege Edward Lynch, clerk of that court, failed to place the appeal in its proper position on the list in violation of the Connecticut Practice Book.

After hearing the appeal on April 23, 1974, the Court of Common Pleas sustained the appeal on July 11, 1974, directing the Inspector to reinstate the building permit. Counsel for the City of New Haven filed a petition for certification to the Connecticut Supreme Court as allowed by Conn. Gen. Stat. § 8–8. Plaintiffs allege Mr. Lynch, the court clerk, failed promptly to prepare the record on petition for submission to the Connecticut Supreme Court although required to do so by § 761K of the Connecticut Practice Book. On November 1, 1974 the Connecticut Supreme Court denied the city's petition for certification.

Plaintiffs allege that between November 6, 1974 and March 2, 1975 Building and Electrical Inspectors for the City of New Haven refused to issue an electrical permit, insisted Marty's submit plans for correction of claimed violations on other premises owned by the landlord from whom Marty's was leasing the property, refused promptly to inspect the premises of the future health club, and delayed ordering and then enforcing the order against Marty's landlord to correct violations. Plaintiffs also allege that between the above dates employees of the city Fire Marshal harassed Marty's with numerous inspections and by generally imposing unusual, arbitrary, and capricious requirements under the fire safety code. Plaintiffs claim that all the actions of defendants were done under the direction of the then Mayor of New Haven,[1] that the conspirators' actions deprived them of equal protection and due process rights and impaired their contractual obligations, and that they incurred great expense, loss of profits, and in the case of Velma Ross, loss of anticipated salary and dividends as a result of defendants' actions.

## II. VELMA ROSS' STANDING TO SUE

As stockholders and employees of Marty's, Martin and Velma Ross claim they are entitled to anticipated dividends and salaries which were lost as the result of defendants' actions. Martin Ross, now deceased, had been the principal stockholder, President and Treasurer of Marty's. Velma Ross was a stockholder and Secretary of Marty's and, as Martin Ross' executrix, is also suing on behalf of his estate.

■ Defendant Lynch has challenged plaintiff Velma Ross' standing to sue either as a stockholder and employee of Marty's or as the executrix of Martin Ross. Stockholders have been denied standing to sue in civil rights actions for damages suffered by a corporation in which they own shares. *Smith v. Martin,* 542 F.2d 688, 690 (6th Cir. 1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977); *Erlich v. Glasner,* 418 F.2d 226, 227 (9th Cir. 1969); *Merco Properties, Inc. v. Guggenheimer,* 395 F.Supp. 1322, 1325 (S.D.N.Y. 1975). Although plaintiffs present a novel argument that they as officers suffered personal losses of anticipated salaries which would not be recovered through damages paid to the corporation for lost profits, this does not change the situation here. Any losses suffered by Velma and Martin Ross still flow from the alleged losses Marty's incurred by the denial of the building permit and subsequent events. There are no allegations of separate injuries to plaintiffs as individuals, such as an allegation of damage to their reputations.[2] *See Merco Properties, Inc. v. Guggenheimer, supra* at 1325. In the three

---

1. Bartholomew Guida, former Mayor of New Haven, passed away in April, 1978.

2. In addition, there are no facts in the complaint showing that the salaries already received by Velma Ross and Martin Ross, if any, would have changed as a result of the success of the new health club. The officers may not have received any salaries regardless of the success or failure of the new club, or the level of salaries the officers were already receiving may have been set by corporate policy rather than being dependent upon new development plans of the corporation.

cases cited above which denied standing to individual plaintiffs, all the plaintiffs were also corporate officers. Therefore, these cases are apposite and the motion to dismiss the claims of Velma Ross, suing individually and as executrix of the estate of Martin Ross, is granted. Since the issue of Velma Ross' standing to sue is jurisdictional, the dismissal of her claims applies to all defendants.

## III. MARTY'S § 1985 CLAIM

■ The remaining plaintiff, Marty's, alleges that defendants conspired to deprive it of equal protection of the laws in contravention of 42 U.S.C. § 1985. Section 1985(3) gives a remedy to parties injured when "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." Although by the statute's terms "any person" may seek relief for alleged deprivations, the Supreme Court in interpreting Section 1985(3) has narrowed the statute's scope by requiring as an element of the cause of action "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[3] *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The facts in *Griffin* relate to a private conspiracy, but the allegation of a class-based, invidiously discriminatory animus is still necessary to maintain a claim against public officials. *See, e.g., Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir. 1978) (defendants included building department officials); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied,* 425 U.S.

904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Harrison v. Brooks,* 519 F.2d 1358, 1359 (1st Cir. 1975) (defendants included planning board member and building inspector); *Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir. 1973); *cf. Elmwood Properties, Inc. v. Conzelman,* 418 F.2d 1025, 1028 (7th Cir. 1969), *cert. denied,* 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970).

■ Marty's has failed to allege any racial or other class-based, invidiously discriminatory animus motivating the actions of the alleged coconspirators. Even if Marty's were able to show personal animus of defendants towards it, such evidence would not be probative: the complaint must allege facts showing that defendants conspired against plaintiff because of its membership in a class and that the criteria defining the class were invidious. *Hahn v. Sargent, supra* at 469; *Harrison v. Brooks, supra,* at 1359. Marty's has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1985, and defendant's motions to dismiss as to the Section 1985 claim are granted.

## IV. MARTY'S § 1983 CLAIM

### A. Motion to Dismiss by Defendant Edward Lynch on the Basis of Judicial Immunity for Court Clerks

Edward Lynch, Clerk of the Court of Common Pleas, claims that he is immune from damage liability for actions taken in his official capacity under the doctrine of judicial immunity. In cases involving damage claims based on 42 U.S.C. § 1983, two general types of immunity have been recognized: absolute immunity and qualified immunity.[4] The Supreme Court has granted

---

**3.** The Supreme Court in *Griffin* stated:

The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. 403 U.S. at 102, 91 S.Ct. at 1798.

**4.** Two excellent discussions of defenses and immunities in Section 1983 actions can be found in Newman, *Suing the Lawbreakers: Proposals to Strengthen the Section 1983 Damage Action Remedy for Law Enforcers Misconduct,* 87 Yale L.J. 447, 458 (1978), and *Develop-*

absolute immunity to legislators,[5] judges,[6] and prosecutors,[7] in order to protect the discretion necessary for the proper exercise of their decision-making powers. On the other hand, the Court has ruled that governors,[8] police officers,[9] and school board members[10] have only qualified immunity. The type of immunity available to court clerks, if any, is an unsettled question. The Supreme Court has not yet had occasion to address this issue, there are no cases on point decided by the Second Circuit Court of Appeals, and the various decisions of other federal courts conflict and occasionally are inconsistent in their use of immunity terminology.

From a procedural perspective the decision on the type of immunity available is crucial. The Supreme Court has noted that absolute immunity defeats a suit at the outset so long as the official's acts are within the scope of his duties, whereas qualified immunity allows an action to proceed to trial in order to establish the circumstances behind, and the motivation for, the official's conduct. *Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1975).

█ The absolute immunity accorded judges, also known as judicial immunity, provides protection for all acts within the judicial role—including "grave procedural errors," malicious acts, or acts done in excess of the judge's authority. *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The recent Supreme Court decision in *Stump* established one exception to a judge's absolute immunity by declaring that there is no immunity for acts done in the "clear absence of all jurisdiction," (i.e. where there is no statutory grant of power to hear a case, or for non-judicial acts). *Id.* at 357–360, 98 S.Ct. at 1105–1106. The Court cited examples of non-judicial acts found in Circuit Court decisions—a judge's use of force in the courtroom, and acts done by a judge as a member of a board with legislative and administrative powers. *Id.* at 361 n.10, 98 S.Ct. at 1107. The clothing of judges in such a comprehensive immunity has been thought necessary to protect judicial discretion. The Court has reasoned that imposing the burden of potential litigation on judges "would contribute not to principled and fearless decision-making but to intimidation." *Pierson v. Ray, supra,* 386 U.S. at 554, 87 S.Ct. at 1218.

█ The Supreme Court has invoked the same rationale to extend absolute immunity to prosecutors. The Court has taken the position that prosecutors must have absolute immunity in order to be free to exercise their best judgment in deciding which suits to bring and in prosecuting these suits. Requiring prosecutors to defend these decisions years later would have an intolerable effect on the prosecutors as well as an adverse effect on the functioning of the criminal justice system.[11] *Imbler v. Pachtman, supra,* 424 U.S. at 426, 96 S.Ct. 984. However, even the absolute immunity granted to prosecutors is limited to situations where they function as advocates

ments in the Law: Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1199–1222 (1977).

**5.** *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

**6.** *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

**7.** *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**8.** *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

**9.** *Pierson v. Ray, supra* note 6.

**10.** *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

**11.** It should be noted that "quasi-judicial immunity" is the term used by some courts to describe the absolute immunity extended to non-judicial figures such as prosecutors and parole board members who must exercise discretion in making decisions. *See, e.g., Imbler v. Pachtman, supra* note 7, 424 U.S. at 420, 96 S.Ct. 984. *McLallen v. Henderson,* 492 F.2d 1298, 1300 (8th Cir. 1974); *Stewart v. Minnick,* 409 F.2d 826 (9th Cir. 1969).

rather than as administrators or investigative officers. *Id.* at 429, 96 S.Ct. 984; *Briggs v. Goodwin,* 186 U.S.App.D.C. 179, 569 F.2d 10 (1977). Thus, the Supreme Court's decisions concerning immunity teach that absolute immunity should be given sparingly and only under circumstances where it is imperative to protect an official's discretion in making crucial decisions. Since the purpose of 42 U.S.C. § 1983 is to provide a federal remedy to persons deprived of their rights by the actions of public officials, "to extend absolute immunity to any group of state officials [would be] to negate *pro tanto* the very remedy which it appears Congress sought to create." *Imbler v. Pachtman, supra,* 424 U.S. at 434, 96 S.Ct. at 996 (White, J., concurring). *See Jobson v. Henne,* 355 F.2d 129, 133 (2d Cir. 1966).

Several federal courts have extended absolute immunity to court clerks.[12] Although two unreported cases in this district appear to have taken this position, these decisions did not discuss the alternative of qualified immunity. *LaReau v. Felie,* No. H–74–191 (D.Conn. July 30, 1974); *LaReau v. Clerk, Hartford Cty. Super. Ct.,* No. 14639 (D.Conn. Sept. 21, 1971). At the time the *LaReau* cases were decided, the District Court did not have the benefit of the more recent Supreme Court pronouncements on absolute and qualified immunity. *Stump v. Sparkman, supra; Imbler v. Pachtman, supra; Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). More importantly, an earlier decision in this district by a three judge court had ruled that a court clerk was not a judicial officer and therefore was not immune from suit. *Boddie v. Connecticut,* 286 F.Supp. 968, 971

(D.Conn. 1968), *rev'd on other grounds,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

▮ Other federal courts have explicitly refused to extend absolute immunity to court clerks, at least when they are performing ministerial acts.[13] Although absolute immunity may be available to protect discretionary actions of a clerk, such as setting bail amounts, *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973), only qualified immunity should be accorded clerks performing ministerial duties, such as filing papers and preparing records. *McLallen v. Henderson,* 492 F.2d 1298, 1299 (8th Cir. 1974); *McCray v. Maryland,* 456 F.2d 1, 3–4 (4th Cir. 1972); *cf. Briggs v. Goodwin, supra,* 186 U.S.App.D.C. at 185 n.7, 569 F.2d at 16 n.7. This rule seems more in accord with the reasoning of the recent Supreme Court decisions which base the need for a certain level of protection upon the particular function of the public official involved. Qualified immunity, sometimes referred to as a " 'good faith and probably cause' defense," [14] protects officials who have acted within the scope of their authority, *McCray v. Maryland, supra* at 4–5. This defense is established through the presentation of facts at trial concerning the official's state of mind and the reasonableness of his conduct. A similar defense is available to court clerks or other public officials who have acted pursuant to a judicial directive. *Id.* at 5; *see Smith v. Martin, supra* at 690–91; *Waits v. McGowan,* 516 F.2d 203, 206 (3d Cir. 1975). This latter defense prevents clerks from being held responsible for judges' decisions and avoids the circumvention of the judges' immunity. *Blouin v. Dembitz,* 367 F.Supp. 415, 422 (S.D.N.Y. 1973), *aff'd,* 489 F.2d 488 (2d Cir. 1973).

**12.** *See Slotnick v. Slaviskey,* 560 F.2d 31 (1st Cir. 1977); *Davis v. McAteer,* 431 F.2d 81 (8th Cir. 1970) (but see later Eighth Circuit opinion cited in note 13, *infra* ); *Dieu v. Norton,* 411 F.2d 761 (7th Cir. 1969); *Sullivan v. Kelleher,* 405 F.2d 486 (1st Cir. 1968); *Zimmerman v. Spears,* 428 F.Supp. 759 (W.D.Tex. 1977); *Pritt v. Johnson,* 264 F.Supp. 167 (M.D.Pa. 1967); *Rudnicki v. McCormack,* 210 F.Supp. 905 (D.Mass. 1962), *appeal dismissed,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963).

**13.** *See McLallen v. Henderson,* 492 F.2d 1298 (8th Cir. 1974) (official court reporter); *Barnes v. Dorsey,* 480 F.2d 1057 (8th Cir. 1973); *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972); *Norwood v. Solomon,* 431 F.Supp. 380 (E.D.Mo. 1977); *Stephen v. Drew,* 359 F.Supp. 746 (E.D.Va. 1973); *McGhee v. Moyer,* 60 F.R.D. 578 (W.D.Va. 1973); *Johnson v. Crumlish,* 224 F.Supp. 22 (E.D.Pa. 1963).

**14.** *Imbler v. Pachtman, supra* note 7, 424 U.S. at 418, 96 S.Ct. at 989; *Pierson v. Ray, supra* note 6, 386 U.S. at 555–557, 87 S.Ct. 1213.

The Court of Appeals for the Fourth Circuit, in a particularly well-reasoned opinion, has used the above two defenses as a basis for reconciling previous decision granting judicial or absolute immunity to court clerks with the concept of qualified immunity. *McCray v. Maryland, supra* at 4–5. The court clerks' actions in the previous judicial immunity cases either were performed in the discharge of the clerks' lawful duties, not in neglect or violation of those duties, or were performed in accordance with judicial orders. The *LaReau* cases decided in this district fit nicely into the framework articulated by the court in *McCray.*[15]

 In the instant case, Mr. Lynch allegedly failed to perform two ministerial tasks mandated by the Connecticut Practice Book.[16] Because the tasks required of Mr. Lynch do not involve the use of discretion or any decision-making duties, there is no

need to consider the applicability of absolute immunity. Whether qualified immunity would protect Mr. Lynch from liability for his alleged delays is a question to be determined at trial upon the evidence. However, the motion to dismiss cannot be granted on the ground of immunity for court clerks.

**B. Constitutional Infractions by Defendant Edward Lynch**

 Mr. Lynch also claims that even if he had failed to place the appeal in its proper position on the trial list and to prepare the record for the appeal in the allotted time, these actions are not of constitutional dimensions and therefore are not cognizable under 42 U.S.C. § 1983, citing *Hamrick v. Norton*, 322 F.Supp. 424, 426 (D.C. Kan. 1970), aff'd, 436 F.2d 940 (10th Cir. 1971). In *Hamrick*, a court clerk allegedly

**15.** In *LaReau v. Felie,* a state prison parolee filed a Section 1983 action against a state judge, court clerk, and police officer claiming that he suffered a nine-day delay before arraignment and thus was deprived of his right to be promptly arraigned. Judge Clarie ruled that the complaint did not support a civil rights action and dismissed the petition. The police officer was merely carrying out a judicial order and "judicial unity [sic] shields the Clerk of the Court for acts performed in his official capacity, *in the absence of any showing sufficient to abrogate the immunity.*" (emphasis added). Thus from the facts given in the opinion, it does not appear that the clerk in that case took any overt actions outside of or in violation of his legal duties. The opinion also anticipates that there might be cases in which, upon sufficient showing of conduct, immunity would not shield court clerks.

In *LaReau v. Clerk,* the same plaintiff, then a prison inmate, filed a Section 1983 action against a court clerk for his refusal to accept or file plaintiff's motion for the appointment of counsel to assist in divorce proceedings. The clerk so refused because Connecticut state courts have no power to appoint attorneys for litigants in divorce cases. Judge Clarie dismissed the part of the petition requesting damages on the basis the clerk, "as a quasi-judicial officer, is immune from suit for monetary damages in respect to his performance of official functions." Again it is clear that the court clerk was performing in accordance with his legal duties; it is not within the Clerk's power to act as the defendant requested.

**16.** The Connecticut statute states "[a]ppeals from decisions of [zoning board of appeals] shall be privileged cases to be heard by the court, unless cause is shown to the contrary, as soon after the return day as is practicable." Conn. Gen. Stat. § 8–8 (1977). The Connecticut Practice Book §§ 199, 203 and 213, taken together, indicate that a court clerk is to schedule privileged cases on the trial list as soon as possible in the order in which they are claimed for assignment.

Plaintiffs' second claim against Mr. Lynch involves a more explicit mandatory duty of court clerks. Connecticut Practice Book § 761K sets out a specific time by which the court clerk is to prepare the record for the Supreme Court in cases involving review of zoning appeals from the Court of Common Pleas:

Upon filing of respondent's brief (which under § 761G is to be filed within ten days of service of the petition of certification upon respondent), or in any event upon the expiration of the time within which respondent's brief must be filed, the clerk of the court where the judgment was rendered *shall* forward to the Clerk of the Superior Court in Hartford: (1) nine copies of the file . . . and (2) the papers returned to the court constituting the record before the administrative agency. . . . (Adopted May 23, 1973, to take effect September 4, 1973). (emphasis added)

Although the precise lengths of the delays is not revealed in the papers, Marty's has made sufficient allegations of delay to withstand a motion to dismiss.

failed to send plaintiff a certified notice of appeal with proof of service and failed to forward a certified copy of the journal entry regarding plaintiff's conviction to the clerk of the Kansas Supreme Court pursuant to Kansas statute. In one of three alternative holdings, the District Court stated that the clerk's failure to comply with the Kansas statute did not amount to invidious discrimination which would arise to the dignity of a constitutional infraction. *Id.* at 426. Nonetheless, the facts in the instant case are distinguishable from *Hamrick,* as a series of delays are the gravamen of Marty's complaint. We cannot say at this stage that allegations of two separate delays by Mr. Lynch, when combined with the delays allegedly caused by other defendants, fail to state a sufficient constitutional deprivation. Even negligence can be the basis for a Section 1983 cause of action, if the negligence leads to a constitutional deprivation. *Carter v. Carlson,* 144 U.S. App.D.C. 388, 395, 447 F.2d 358, 365 (1971), *rev'd on other grounds sub nom., District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

### C. Federal Remedies in Cases Involving Constructions of Local Ordinances

Defendants assert that Marty's claims should be heard in state court, if at all, because they merely revolve around an allegedly wrongful construction of New Haven zoning ordinances. However, Section 1983 provides a *federal* remedy whenever any person "under [the] color of any statute [or] ordinance . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Corporations are deemed persons entitled to the protection of the equal protection and due process clauses of the Fourteenth Amendment. *Grosjean v. American Press Co.,* 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936). Thus, Marty's does have constitutionally-based rights which can be protected in a Section 1983 action. *See, e.g., Pennsylvania Bank & Trust Co. v. Hanisek,* 426 F.Supp. 410, 412–

413 (W.D.Pa. 1977); *Raymond Motor Transp., Inc. v. Rice,* 417 F.Supp. 1352, 1354 n.1 (W.D.Wis. 1976), *rev'd on other grounds,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978).

Although a civil rights action normally does not exist merely by reason of enforcement of a lawful ordinance by public officials, *Wallach v. City of Pagedale,* 359 F.2d 57, 59 (8th Cir. 1966), allegations of unfair and discriminatory enforcement have been held to state a civil rights action. *Ellentuck v. Klein, supra* at 430 (dictum); *see Burt v. City of New York,* 156 F.2d 791 (2d Cir. 1946); *cf. National Land & Investment Co. v. Spector,* 428 F.2d 91, 100 (3d Cir. 1970) (*dictum*). In *Burt,* the Second Circuit sustained a civil rights action under the predecessor statute to Sections 1983 and 1985 brought by an architect against the Board of Standards and Appeals in New York City and other Building Department officials. In that case, the defendants repeatedly had denied plaintiff permits he sought; the complaint alleged that defendants singled him out for oppressive measures. Although Marty's will have to bring forth substantial facts at trial supporting its allegations of discriminatory treatment, it does not appear from the pleadings "beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Thus, the motions to dismiss the Section 1983 cause of action as to plaintiff Marty's are denied.

It is hereby ordered that defendants' motions to dismiss are granted in part and denied in part. As to the claims made under 42 U.S.C. § 1985 and as to all claims made by plaintiff Velma Ross, the motions to dismiss are granted. As to Marty's claims against defendants under 42 U.S.C. § 1983, the motions to dismiss are denied.