CITIZENS FOR A BETTER ENVIRON-MENT, An Illinois Not-for-Profit Corporation, and Mark F. Voight, Plaintiffs,

v.

CITY OF CHICAGO HEIGHTS, Illinois, George Bonick, Dominic J. Calacci, Joe Faso, John M. Gliottoni, Jr., John A. Maloni, Louise H. Marshall, Nick J. Pagoria, Charles Panici, Henry J. Pilotto, Eugene F. Sadus, Defendants.

No. 78 C 4706.

United States District Court,
N. D. Illinois, E. D.

Nov. 15, 1979.

Bill S. Forcade, Chicago, Ill., for plaintiffs.

James F. Creswell, Corp. Counsel for City of Chicago Heights, Chicago Heights, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

### Motion to Dismiss

Plaintiffs Citizens for a Better Environment (CBE) and Mark Voight bring this action pursuant to 42 U.S.C. § 1983 against defendants City of Chicago Heights (Chicago Heights) and various public officials of Chicago Heights. Plaintiffs allege that Defendants regulation of peddling activities pursuant to Chicago Heights Ordinance, Chapter 32 (Chapter 32) abridges plaintiffs' First and Fourteenth Amendment rights. Chapter 32 is set out in full as an appendix to this opinion. Plaintiffs request that Chapter 32 be declared unconstitutional on its face and as applied to plaintiff and that defendants be preliminarily and permanently enjoined from enforcing Chapter 32 with respect to plaintiffs' canvassing activities. Further, plaintiffs request both compensatory and punitive damages to redress injuries plaintiffs allege they have suffered as a result of defendants' alleged unconstitutional and bad faith or reckless application of Chapter 32 to plaintiffs. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(3).

Plaintiff CBE is an Illinois non-profit organization organized for the purpose of promoting environmental protection. Two of the primary functions of CBE are canvassing and research. CBE's principal place of business is Chicago, Illinois. Plaintiff Mark Voight is a full-time employee of CBE and his duties include direct responsibility for CBE's canvassing operations in Illinois. Defendant Chicago Heights is an Illinois municipal corporation located in Cook County. The individual defendants are all past or present officials of Chicago Heights.

Pending before this Court is defendant Chicago Heights' (defendant) motion to dismiss. For the reasons set forth below, the motion is denied.

Plaintiffs' alleged cause of action arises from its several recent attempts to conduct a door-to-door canvass of the residents of Chicago Heights. CBE states that it canvasses the residents of over 250 municipalities annually for the purposes of disseminating information concerning environmental protection issues, seeking membership in CBE, and soliciting financial support.

Plaintiffs allege that during the period from 1975 through the present, defendant has invoked Chapter 32 in order to either impermissably deny plaintiffs' requests to canvass the residents of Chicago Heights or to place unreasonable restrictions upon plaintiffs' asserted right to canvass the residents of Chicago Heights. On February 2, 1976 plaintiffs brought suit against defendant, certain of its officials, and numerous other Illinois municipal corporations and the officers thereof, requesting, *inter alia*, that the Chicago Heights defendants be preliminarily and permanently enjoined from enforcing Chapter 32. *Citizens for a Better Environment v. Village of Justice*, Civ. No. 76–470 (N.D.Ill., filed Feb. 2, 1976) (hereinafter *CBE I*). Plaintiff specifically challenged those provisions of Chapter 32 requiring that peddlers be fingerprinted, post a one thousand dollar bond, and appoint the City Clerk as an agent for service of process. Plaintiffs did not seek monetary relief in *CBE I*.

With respect to the instant defendant, the court in *CBE I* permanently enjoined defendant from enforcing as against plaintiff the provisions of Chapter 32 specifically challenged by plaintiffs therein on the grounds that the provisions violated plaintiffs' First Amendment rights. *Citizens for a Better Environment v. Village of Justice*, Civ. No. 76–470 at 4–5 (N.D.Ill., Mar. 8, 1977). The court in *CBE I* explicitly stated that its order did not rule upon the validity of the provision of Chapter 32 requiring the payment of daily fees. *Id.* at 4. By letter dated March 28, 1979, counsel for defendant informed CBE that defendant would waive the payment of fees required by Chapter 32, at least with respect to CBE's then pending application to solicit. On April 3, 1979, the court in *CBE I* ruled plaintiffs' motion for a preliminary injunction to be moot. *Citizens for a Better Environment v. City of Chicago Heights*, Civ. No. 76–470 (N.D.Ill., Apr. 3, 1979).

██ This Court's discussion of the instant motion begins by noting that a motion to dismiss for failure to state a claim upon which relief can be granted can only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Defendant asserts two grounds in support of its motion to dismiss. First, with respect to plaintiffs' request for declaratory and injunctive relief, defendant does not assert that plaintiffs have not alleged a colorable claim under section 1983, but rather that plaintiffs' claim has been mooted by the culminating events of the *CBE I* action. Second, defendant argues that plaintiffs' allegations do not present a cognizable claim for monetary relief. The Court will take up each of these arguments in turn.

In support of its first argument, defendant points out that the *CBE I* court has permanently enjoined defendant from enforcing as against plaintiff the provisions of Chapter 32 challenged therein, that defendant has informed plaintiff that it will waive the payment of permit fees as to plaintiffs' instant permit application, and that defendant has instructed its Chief of Police to cease enforcement of Chapter 32 with respect to CBE and all other nonprofit organizations. Defendants' Reply Memorandum, ¶¶ 6–7. Further, defendant asserts that it has initiated procedures to revise and rewrite Chapter 32. *Id.*, ¶ 5.

 This Court has no jurisdiction to hear a case if events occurring subsequent to the filing of the suit have caused it to lose "its character as a present, live controversy of the kind that must exist . . . to avoid advisory opinions on abstract propositions of law." *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). By order of April 3, 1979 the court in *CBE I* declared plaintiff's request therein for a preliminary injunction moot, without articulating any reasons for its decision. Presumably, the grounds for the court's order were simply that its order permanently enjoining defendants from enforcing the challenged provisions of Chapter 32 as against plaintiff had rendered their request for preliminary injunctive relief moot. Therefore,

insofar as plaintiffs now assert a claim for declaratory and injunctive relief on the basis that Chapter 32 is facially invalid or that the permit fee and time restriction provisions of Chapter 32 are invalid the court's disposition of *CBE I* has not mooted plaintiff's instant action. *See NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

■ Moreover, the Court holds that defendants' alleged voluntary cessation of enforcement of Chapter 32 provides an insufficient basis for a finding of mootness. *E. g., United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). *See generally*, L. Tribe, *American Constitutional Law*, 66–67 (1978). The instant case does not present the situation where "subsequent events [have] made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Phosphate Export Association*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). Rather, here the defendant is free, beyond the parameters of the *CBE I* injunction, to return to enforcement of the allegedly illegal ordinance, unless and until Chapter 32 is actually revised or rewritten. Hence, there remains a public interest in having the legality of the challenged aspects of Chapter 32 settled. *United States v. W. T. Grant Co.*, 345 U.S. at 632–33, 73 S.Ct. 894.

The Court now turns to defendants' second argument which relates to plaintiffs claim for damages. Plaintiffs allege that defendants "knew or should have known the basic, unquestioned constitutional rights of Plaintiffs" and that defendant "acted with bad faith and with malicious intent or with reckless disregard to deliberately deprive Plaintiffs of their [constitutional] rights." Plaintiffs' Complaint, ¶¶ 55–56. Plaintiffs allege injury by reason of defendant's allegedly unconstitutional acts in the form of financial loss, loss of membership, loss of reputation, loss of petitions for support, and loss of pollution complaints. Defendant contends that these allegations do not support a claim for monetary damages. Alternatively, defendant argues that the alleged injuries suffered by plaintiff are speculative and conjectural in nature and therefore will not support an award of damages.

■■ Clearly, municipal bodies are subject to claims for damages under section 1983 where pursuant to the duly authorized execution of its ordinances or policies constitutional rights are abridged. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). Here plaintiffs' cause of action against defendant does proceed on the basis of a challenge to its duly adopted ordinance and the official execution thereof, as opposed to on the basis of a challenge to the acts of defendant's officials pursuant to a *respondeat superior* or vicarious liability theory. *Id.* at 694, 98 S.Ct. 2018; *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Accordingly, plaintiffs state a colorable cause of action against defendant in view of the teachings of *Monell*.

■ However, the *Monell* Court, while foreclosing the availability of absolute immunity to municipal bodies, left undecided the question of whether a qualified immunity akin to that enjoyed by state executive officials, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Knell v. Bensinger*, 522 F.2d 720, 724–25 (7th Cir. 1975), would also be available to municipal bodies. *Monell v. New York City Department of Social Services*, 436 U.S. at 701, 98 S.Ct. 2018. The standard of *Wood v. Strickland* provides that officials cloaked with a qualified immunity will be immune from damages under section 1983 unless the plaintiff to the action establishes that the defendant acted with either a malicious intent to deprive plaintiff of his constitutional rights or that defendant knew or should have known that his official action would result in a violation of plaintiffs' clearly established constitutional rights. *Wood v. Strickland*, 420 U.S. at 321–22, 95 S.Ct. 992. The rationale for extending a qualified immunity to state executive officials is two-pronged: (1) to avoid the sense of injustice that an official would experience upon be-

ing held culpable for acts which he reasonably performed; and (2) to prevent officials from being unduly inhibited in the discharge of their duties. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The lower federal courts that have addressed the question of municipal immunity since *Monell* have generally conferred upon a defendant municipal body the same qualified immunity as extended to state executive officers. *Id.; Stringer v. City of Chicago,* 464 F.Supp. 887, 890 n. 3 (N.D.Ill. 1979). *But see* Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213, 245–47 (1979). Admittedly, the two-pronged rationale for cloaking individuals with a qualified immunity is only partially applicable to municipal entities. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). While a municipal entity can not itself experience a sense of injustice as a result of being held culpable when it acted reasonably, there is credence to the claim that municipal officials would be unduly inhibited in discharging their official duties in the absence of some form of municipal immunity. *Sala v. County of Suffolk,* 604 F.2d 207 (2d Cir. 1979).

In any event, plaintiffs' complaint states a claim for damages, whether or not a qualified immunity is extended to defendant. Plaintiffs' complaint alleges that the officials charged with the execution of Chapter 32 did so either when they knew or should have known that the ordinance was violative of plaintiffs' established constitutional rights, Plaintiffs' Complaint, ¶¶ 56–57, or with a malicious intent to deprive plaintiffs of their constitutional rights. *Id.,* ¶ 55. Accordingly, plaintiffs state a claim upon which monetary relief may be granted. Whether defendant's officials actually possessed either reasonable knowledge or a malicious intent are questions to be determined at trial upon the evidence. *Marty's Adult World of New Britain v. Guida,* 453 F.Supp. 810 (D.Conn.1978). Therefore, even if events subsequent to the entry of

this opinion were to moot plaintiffs' request for declaratory and injunctive relief, this action would proceed upon plaintiffs' claim for money damages. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 8, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

Finally, the Court rejects defendant's contention that plaintiffs' alleged injuries are so speculative or conjectural as to preclude an award of damages as a matter of law. Defendant offers no argument or authority for this proposition and the Court is aware of none. Accordingly, defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby denied. However, the Court notes, without prejudicing any of the parties, that this action may, after some discovery, be amenable to disposition by way of a motion for summary judgment.

## Chapter 32

## PEDDLERS *

Art. I. In General, §§ 32–1—32–17

Art. II. Permit, §§ 32–18—32–30

### ARTICLE I. IN GENERAL

Sec. 32–1. Definition.

The word "peddler" as used in this chapter shall mean any person, whether a resident of this city or not, traveling from place to place, from house to house, or from street to street, for the purpose of selling or soliciting for sale, goods, wares, merchandise or services; and shall also mean and include any person transacting a temporary business within the city at an established place of business. The word "peddler" shall include the terms "solicitor," "transient or itinerant merchant or vendor," or "transient or itinerant photographer."

Sec. 32–2. Exceptions to chapter.

The provisions of this chapter shall not apply to solicitations, sales or distributions made by charitable, educational or religious organizations which have their principal place of activity in the city.

* Cross references—Licenses generally, Ch. 26; sales, Ch. 36.

State law reference—Authority of city to regulate peddlers, Ill.Rev.Stat., Ch. 24, § 11–42–5.

## Sec. 32–3. Refusing to leave.

Any peddler who enters upon premises owned, leased or rented by another and refuses to leave such premises after having been notified by the owner or occupant of such premises, or his agent, to leave the same and not return to such premises, shall be deemed guilty of a misdemeanor.

## Sec. 32–4. Entrance to premises restricted.

It shall be unlawful for any peddler to enter upon any private premises when the same are posted with a sign stating "No Peddlers Allowed" or "No Solicitations Allowed" or other words to such effect.

## Sec. 32–5. Misrepresentation.

It shall be unlawful for any peddler to make false or fraudulent statements concerning the quality or nature of his goods, wares, merchandise or services for the purpose of inducing another to purchase the same. (Code 1954, § 26.4)

## Sec. 32–6. Hours of operation.

It shall be unlawful for any peddler to engage in the business of peddling within the city between the hours of one-half (½) hour before sunset and 9:00 a. m. the following morning, or at any time on Sundays, except by specific appointment with or invitation from the prospective customer.

## Sec. 32–7. Use of telephone.

It shall be unlawful for any peddler to use a telephone for the peddling of goods, wares, merchandise or services or the solicitation of funds or any other activity connected to the business of peddling or soliciting.

## Secs. 32–8—32–17. Reserved.

### ARTICLE II. PERMIT

## Sec. 32–18. Required.

It shall be unlawful for any person to engage in business as a peddler within this city without first obtaining a permit so to do. (Code, 1954, §§ 24.37, 26.1, 26.5, 26.8)

## Sec. 32–19. Application.

The application for a permit required by the provisions of this article shall:

(a) Contain a statement as to whether or not the applicant has been convicted of any crime, misdemeanor or violation of any state or federal law or municipal ordinance or Code; the nature of the offense; the punishment or penalty assessed therefor, if previously convicted; and the place of conviction.

(b) Whether the applicant, upon any sale or order, shall demand, accept or receive payment, or deposit, of money in advance of final delivery.

(c) The period of time the applicant wishes to engage in business within this city.

(d) The local, and permanent, address of the applicant.

(e) The local, and permanent, address and the name of the person, if any, that the applicant represents.

(f) The kind of goods, wares, merchandise or services the applicant wishes to engage in such business within the city.

(g) The last five (5) cities or towns wherein the applicant has worked before coming to this city.

(h) Such other relevant information as may be required for the investigation of the applicant. (Code 1954, §§ 24.-37, 26.2, 26.6, 26.9)

## Sec. 32–20. Driver's license.

At the time of filing his application for a permit required by this article, the applicant shall present his driver's license, if he has one, to the city clerk.

## Sec. 32–21. False information.

It shall be unlawful for any person to give any false or misleading information in connection with his application for a permit required by this article.

### Sec. 32–22. Fingerprints, photographs.

At the time of making application for a permit required by this article, the applicant shall submit to fingerprinting and photographing by the chief of police. (Code 1954, § 26.13)

### Sec. 32–23. Fee.

Before any permit shall be issued under the provisions of this article, the applicant therefor shall pay a fee, based upon the duration he desires to engage in business in the city, as follows:

| | |
|---|---|
| Per day | $ 5.00 |
| Per week | 10.00 |
| Per month | 25.00 |
| Per 3 months | 50.00 |
| Per 6 months | 75.00 |
| Per 12 months | 100.00 |

(Code 1954, §§ 26.3, 26.7, 26.10)

### Sec. 32–24. Bond required.

The application for a permit required by the provisions of this article shall be accompanied by a bond in the penal sum of one thousand dollars ($1,000.00) signed by the applicant and signed, as surety, by some surety company authorized to do business in this state, conditioned for the final delivery of goods, wares, merchandise or services in accordance with the terms of any order obtained prior to delivery and also conditioned to indemnify any and all purchasers or customers for any and all defects in material or workmanship that may exist in the article sold by the principal of such bond, at the time of delivery, and that may be discovered by such purchaser or customer within thirty (30) days after delivery, and which bond shall be for the use and benefit of all persons that may make any purchase or give any order to the principal on such bond, or to an agent or employee of such principal. (Code 1954, § 26.9)

### Sec. 32–25. Service of process.

Before any permit shall issue under this article, there shall also be filed with the city clerk an instrument in writing, signed by the applicant under oath, nominating and appointing the city clerk his true and lawful agent, with full power and authority to acknowledge service of notice of process for and on behalf of such applicant, and service of summons in any action brought upon the applicant's bond shall be deemed made when served on the city clerk.

### Sec. 32–26. Issuance.

No permit shall be issued under the provisions of this article until the applicant shall have complied with all the provisions and requirements of this chapter.

### Sec. 32–27. Limitation.

No peddler's permit shall be issued to a corporation, partnership or other impersonal legal entity, but each individual person engaging in the business of peddling within the city shall be required to have a permit whether acting for himself or as an agent or representative of another. (Code 1954, § 26.8)

### Sec. 32–28. Display.

Every peddler having a permit issued under the provisions of this article and doing business within the city shall display his permit upon the request of any person, and failure so to do shall be deemed a misdemeanor. (Code 1954, § 26.12)

### Sec. 32–29. Duration.

Every permit issued under the provisions of this article shall be valid for the period of time stated therein, but in no event shall any such permit be issued for a period of time in excess of twelve (12) months. (Code 1954, § 26.10)

### Sec. 32–30. Revocation.

Any permit issued under the provisions of this article may be revoked for the violation by the permittee of any applicable provision of this Code, state law or city ordinance. Upon such revocation, such permit shall be immediately surrendered to the city clerk, and failure to do so shall be a misdemeanor. (Code 1954, § 26.11)